[Cite as *State v. Longnecker*, 2025-Ohio-4780.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                 :

    Appellee,               :        CASE NOS. CA2024-11-082
                                             CA2024-11-083

                                  :

- vs -                            <u>OPINION AND</u>
                                  :        <u>JUDGMENT ENTRY</u>
                                           10/20/2025

CHRISTOPHER W. LONGNECKER,    :

    Appellant.             :

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case Nos. 2023 CRB 02676 and 2024 CRB 00545(A) and (B)

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Zachary K. Garrison, Assistant Prosecuting Attorney, for appellee.

Craig Newburger, for appellant.

# **O P I N I O N**

**PIPER, J.**

{¶ 1} Appellant, Christopher Longnecker, appeals his conviction in the Clermont County Municipal Court, for aggravated menacing in violation of R.C. 2903.21(A), a first-degree misdemeanor; misconduct at an emergency in violation of R.C. 2917.13(A)(3), a fourth-degree misdemeanor; and menacing in violation of R.C. 2903.22(A)(1), also a

fourth-degree misdemeanor. For the reasons outlined below, we affirm.

## I. Factual and Procedural Background

{¶ 2} On July 31, 2023, firefighters from the Felicity-Franklin, Washington Township, and Bethel-Tate Fire Departments were dispatched to extinguish a fire at Christopher Longnecker's home in the Country View Mobile Home Park. Due to the fire, Longnecker's home was badly damaged, his son was burned, and his two pet cats died. While the firefighters were still working at the scene, Longnecker arrived, became agitated, and threatened to "bash" volunteer firefighter Justin Pendergrass' "face in." Pendergrass believed Longnecker would cause him physical harm. Longnecker then left the scene and returned several times.

{¶ 3} Eventually, the Clermont County fire investigation team leader, Christopher Mullins, spoke with Longnecker to obtain consent to search the home for the cause of the fire, but Longnecker refused. Mullins also warned Longnecker that he was not permitted to enter the home, as it was still too dangerous and might interfere with the fire investigation. While the fire investigation team waited to obtain a search warrant, Clermont County Sherrif's deputies followed Longnecker around the property to ensure he did not interfere with the firefighters. Longnecker then attempted to enter the home and was tackled and arrested by the deputies.

{¶ 4} Longnecker was later indicted for misconduct at an emergency, aggravated menacing, and menacing; the case proceeded to jury trial on October 8, 2024. One of the central theories of Longnecker's defense was that none of the public officials at the scene that day specifically told him he could not enter his home. However, at trial, Fire Investigator Mullins testified that he told Longnecker he could not enter his home and Longnecker answered "that he was going into the house no matter what. It was his

house."

{¶ 5} Longnecker's attorney objected to Mullins' testimony arguing "there are statements coming out right now that we have not been disclosed. . . . It appears that the State of Ohio is aware of statements our client made to this witness." During the sidebar discussion, the State did not deny that it was aware Mullins was going to testify to Longnecker's statement and responded dismissively to the defense's apparent surprise: "I can ask him if he told this man not to go in the property and the fact that they think it's prejudicial, it is. Maybe they should pick up the phone and call the witness and interview them. I don't have a report to give them. I disclosed the witness. I've done my job. I can ask the question." The trial court overruled Longnecker's objections and permitted the testimony. Longnecker's oral statement to Mullins was never recorded, summarized, or otherwise documented prior to Mullins' testimony at trial.

{¶ 6} The jury returned guilty verdicts on all three counts. At sentencing, the menacing and aggravated menacing charges merged, and the State opted to sentence for aggravated menacing. The trial court sentenced Longnecker to 180 days in jail and a $200 fine for aggravated menacing, and 30 days in jail and a $100 fine for misconduct at an emergency (to be served consecutively), plus court costs.

{¶ 7} Longnecker now appeals, raising one assignment of error for review.

## II. Legal Analysis

{¶ 8} Assignment of Error:

{¶ 9} THE COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT SUSTAINING HIS OBJECTION TO TESTIMONY ABOUT APPELLANT'S STATEMENTS NOT DISCLOSED PRIOR TO TRIAL AND SUBSEQUENTLY NOT GRANTING APPELLANT'S MOTION FOR A MISTRIAL.

{¶ 10} In his sole assignment of error, Longnecker argues the trial court erred by permitting Mullins' testimony regarding Longnecker's oral statement that he was going into the house "no matter what." Longnecker also argues it was error later for the trial court to not grant his motion for a mistrial. Longnecker asserts that the statement should have been disclosed in discovery, and argues that by permitting the testimony, the court allowed a "trial by ambush and surprise."

{¶ 11} Criminal defendants must be afforded a meaningful opportunity to present a complete defense. *State v. Doyle*, 2021-Ohio-4243, ¶ 26 (12th Dist.), citing *California v. Trombetta*, 467 U.S. 479, 485 (1984). However, "[t]here is no general constitutional right to discovery in a criminal case." *Doyle* at 26, quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Still, Crim.R. 16 identifies what information is discoverable in criminal cases.

{¶ 12} On July 15, 2024, Longnecker filed a request for discovery, including "written summaries of any oral statement made by the Defendant." Longnecker's oral statement to Mullins was never recorded on any officer's body camera and was never documented or summarized in any police report. Prior to Mullins' testimony at trial, the State never disclosed Longnecker's oral statement made to Mullins. Based upon the trial transcript, it appears the State was aware Mullins would testify to Longnecker's oral statement but did not deem it necessary to create a summary or disclose the oral statement to the defense.

{¶ 13} Longnecker's discovery request for written summaries of oral statements appears to be based on the text of Crim.R. 16(B) prior to July 1, 2010. Previously, Crim.R. 16(B) required the prosecution to provide "Written summaries of *any oral statement*, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any

law enforcement officer." Crim.R. 16 (B)(1)(a)(II) (prior to July 1, 2010 amendment) (Emphasis added.). Crim.R.16(B) has since been restructured and this text has been removed. Longnecker's appellate brief seems to assume that a written summary must still be provided but offers no analysis regarding the text deleted from Crim.R. 16(B).

{¶ 14} The amended text of Crim.R. 16(B) now specifies seven categories of items the prosecuting attorney must disclose to the defendant upon receipt of a written demand for discovery. As relevant to our analysis, these include "(1) Any written or recorded statement by the defendant or a co-defendant, including police summaries of such statements . . . (5) Any evidence favorable to the defendant and material to guilt or punishment; (6) All reports from peace officers, the Ohio State Highway Patrol, and federal law enforcement agents." Crim.R. 16(B).

{¶ 15} When examining the Rules of Criminal Procedure, the general principles of statutory construction apply. *State v. Bethel*, 2022-Ohio-783, ¶ 54. Those principles instruct that our role is to apply the language in Crim.R. 16(B) as written "without adding criteria not supported by the text." *See Id.*, quoting *State v. Taylor*, 2020-Ohio-3514, ¶ 9. Because Longnecker's statement to Investigator Mullins was not written, recorded, or included in any police summary; was not favorable to Longnecker; and was not included in any peace officer's report, it was not subject to disclosure.

### III. Conclusion

{¶ 16} Under the plain text of the rule, unrecorded oral statements to a law enforcement officer, that are not subsequently documented in a summary or report, are

not subject to disclosure in discovery.[1] Accordingly, we find the trial court did not abuse its discretion when it admitted Mullins' testimony regarding Longnecker's oral statement and did not abuse its discretion when it denied Longnecker's motion for a mistrial. Longnecker's sole assignment of error is overruled.

{¶ 17} Judgment affirmed.

BYRNE, P.J., and M. POWELL, J., concur.

---

# JUDGMENT ENTRY

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Municipal Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge

---

1. Not every oral statement made by a defendant is always recorded or documented in a report by law enforcement. Therefore, the onus is now on defendants to remember their oral statements. There is concern that a law enforcement officer could specifically choose not to document certain oral statements to avoid disclosure and obtain a surprise advantage at trial. Nevertheless, we are bound to apply the plain text of the rule without making our own additions or subtractions. *See Hubbard v. Canton City Sch. Bd. of Edn.*, 2002-Ohio-6718, ¶ 14.